UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DUANE BAUER,<br><br>        Plaintiff,<br><br>    v.<br><br>PAN-AMERICAN LIFE INSURANCE COMPANY,<br><br>        Defendant. | CASE NO. C06-835JLR<br><br>ORDER DENYING IN PART AND GRANTING IN PART MOTION FOR SUMMARY JUDGMENT |

This matter comes before the court on Plaintiff Dr. Duane Bauer's motion for partial summary judgment (Dkt. # 18). The court has considered the papers filed in support of and in opposition to this motion as well as the oral argument of counsel. In his motion, Dr. Bauer asks the court to find that there is no genuine issue of material fact regarding his eligibility for benefits under the Additional Monthly Benefit and Social Insurance Benefit riders that he purchased from Defendant Pan-American Life Insurance Company ("Pan-American"). For the reasons stated below, the court GRANTS in part and DENIES in part Dr. Bauer's motion.

**I. BACKGROUND**

On February 1, 1991, Dr. Bauer purchased an Income Protection Policy ("primary policy" or "policy") from Pan-American. Engle Decl. ¶ 6, Ex. 4 (Dkt. # 20). Dr. Bauer

ORDER – 1

also purchased two riders, termed the "Additional Monthly Benefit" ("AMB") and "Social Insurance Benefit" ("SIB"). *Id.* The Income Protection Policy was designed to "pay for losses of income due to disabilities beginning while this policy is in force." *Id.* Dr. Bauer also purchased a Regular Occupational rider which allowed him to qualify for benefits if he met the definition of "Regular Occupation Total Disability" rather than "Total Disability." *Id.* Under the policy, "Regular Occupation Total Disability" occurs when the insured "[c]annot work at his or her regular occupation because of injury or sickness; and, [m]ust be under the regular care of a doctor. If in the opinion of the doctor there is no doubt that the Insured is disabled and future or continued treatment would be of no benefit to the Insured, the requirement for regular care of a doctor is satisfied." *Id.* The contract also contains an integration clause which states: "This policy, the attached application and any riders or endorsements make up the entire contract." *Id.*

For purposes of this motion there are three key provisions of the Income Protection policy, the notice of claim provision, the claim forms provision and the proofs of loss provision. These provisions provide as follows:

> Notice of Claim – Written notice of claim must be given within 6 months after a covered loss starts or as soon as reasonably possible. The notice must be given at the Home Office, New Orleans, Louisiana. Notice should include your name and the policy number.
>
> Claim Forms – When we receive the notice of claim, we will send the claimant forms for filing proof of loss. If these forms are not mailed to the claimant within 15 days, the claimant will meet the proof of loss requirements by sending us a written statement of the nature and extent of the loss within the time limit stated in the Proofs of Loss section.
>
> Proofs of Loss – If the policy provides for periodic payment for a continuing loss, written proof of loss must be sent to us within 90 days after the end of each period for which we are liable. For any other loss, written proof must be given within 90 days after such loss. If it is not reasonably possible to give written proof in the time required, we shall not reduce or deny the claim for this reason if the proof is filed as soon as reasonably possible. In any

ORDER – 2

>event, the proof required must be given no later than 1 year from the time specified unless the claimant was legally incapacitated.

*Id.*

From 1987 until June 2004, Dr. Bauer worked as a chiropractor at a practice in Renton, Washington. Engle Decl. ¶ 3, Ex. 1. Dr. Bauer claims in June 2004 that he became disabled by bilateral thumb arthritis which prevented him from continuing in his chiropractic practice. Mot. at 2. Dr. Bauer notified Pan-American by telephone on June 22, 2004 that he was disabled. Engle Decl. ¶ 4, Ex. 2. Pan-American sent Dr. Bauer a "Proof of Loss" form which he filled out and sent back to Pan-American. Pan-American received the completed form on July 8, 2004. *Id.* On August 19, 2004, Pan-American acknowledged that it had received Dr. Bauer's proof of loss and that Pan-American needed additional information by September 10, 2004. *Id.* Over the next few months Dr. Bauer sent Pan-American the requested information. In January 2005, Pan-American informed Dr. Bauer that his claim was "in the evaluation process" and requested additional information. *Id.* On March 24, 2005, Pan-American again informed Dr. Bauer that his claim was "being evaluated." *Id.* On May 10, 2005, an agent for Pan-American conducted an in-person interview of Dr. Bauer. *Id.*

In the spring of 2005, Dr. Bauer filed a complaint regarding the handling of his claim with the Washington insurance commissioner. *Id.* On June 17, 2005, in a letter addressed to the Office of the Insurance Commissioner, Pan-American stated that it had decided to deny Dr. Bauer's claim. *Id.* On January 4, 2006, Dr. Bauer became aware of the denial when his counsel received his claim file from Pan-American. *Id.* Dr. Bauer appealed this determination.

On May 18, 2006, Pan-American's medical reviewer, after considering additional medical records submitted by Dr. Bauer, concluded that "that there is objective clinical

ORDER – 3

documentation to support the claimant's assertion that he has been unable to perform the material and substantial duties of his own occupation as a chiropractor on the basis of [] bilateral CMC joint arthritis." *Id.* This determination was based largely on medical reports provided by Dr. Bauer dated October 21, 2005 and January 21, 2006. Despite this finding Pan-American did not pay Dr. Bauer's claim.

On June 12, 2006, Dr. Bauer filed this lawsuit (Dkt. # 1). On April 2, 2007, Pan-American put Dr. Bauer on claim status and informed him that he would receive the monthly benefit amount under the primary policy on a going-forward basis. Engle Decl. ¶ 5, Ex. 3. The letter also stated: "If Dr. Bauer intends to pursue claims under additional coverages or provisions of the Pan American policy, please advise us promptly and provide proof of claim or loss as required." *Id.* On April 20, 2007, Dr. Bauer sent a letter to Pan-American specifically requesting "payment of full benefits under the Social Insurance Rider and Additional Monthly Benefit Rider" of his policy and that he had "always maintained a claim for these benefits." Engle Decl. ¶ 7, Ex. 5.

## II.  ANALYSIS

**A.     Legal Standard**

Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the non-moving party, demonstrates there is no genuine issue of material fact. Fed. R. Civ. P. 56©); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. County of Los Angeles*, 477 F.3d 652, 658 (9th Cir. 2007). The moving party bears the initial burden of showing there is no material factual dispute and he or she is entitled to prevail as a matter of law. *Celotex*, 477 U.S. at 323. If the moving party meets its burden, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Cline v. Indus. Maint. Eng'g. & Contracting Co.*, 200 F.3d 1223, 1229 (9th Cir. 2000).

## B.     Notice

Pan-American argues that Dr. Bauer did not comply with the policy's requirement that "**written notice** of claim must be given within **6 months** after **a** covered loss starts." Resp. at 9 (emphasis in original).  It argues that the terms of the policy make it "clear" that separate applications for different benefits are required.  Resp. at 8.  Pan-American quotes the portion of the "Notice of Claim" provision which states that written notice must be given within 6 months "after a covered loss starts." *Id.*  Pan-American points to Dr. Bauer's April 20, 2007 letter as the first time it was provided with notice that Dr. Bauer was seeking benefits under either the AMB or SIB riders.  Resp. at 9-10.  Pan-American claims that because it is undisputed that "this notice" did not occur until more than two years after Dr. Bauer's June 2004 disability date, the sufficiency of Dr. Bauer's notice must be determined by examining whether notice was given "as soon as reasonably possible."  Resp. at 10.  Pan-American contends that there is a genuine issue of material fact on the question whether Dr. Bauer provided notice under the AMB and SIB riders as soon as reasonably possible.

Dr. Bauer contends that the issue is not that complex.  He points out that the riders do not contain their own separate Notice of Loss provisions; instead, they provide: "The rider is part of the policy and subject to its provisions."  Engle Decl. ¶ 6, Ex. 4.

It is undisputed that on June 22, 2004, Dr. Bauer contacted Pan-American via telephone to notify it of his disability claim. Engle Decl. ¶ 4, Ex. 2.  It is undisputed that on July 8, 2004, Pan-American received a proof of loss claim form from Dr. Bauer. *Id.*  It is undisputed that the loss Dr. Bauer is seeking to have covered by the riders is the same loss reported on June 22, 2004.  Pan-American has not pointed to any requirement in either rider that Dr. Bauer give separate notice of loss for each portion of the policy

ORDER – 5

under which he is seeking benefits. The court finds Pan-American's argument that the language of the "Notice of Claim" provision requires separate notice for each rider or claimed benefit unpersuasive, no such requirement can be read into the contract language. No genuine issues of material fact remain as to whether Dr. Bauer provided notice of his loss and he is entitled to a ruling as a matter of law that he provided proper notice of loss for both the AMB and SIB riders.

**C.     Proofs of Loss**

Pan-American argues that there are genuine issues of material fact as to whether Dr. Bauer complied with the proofs of loss provision for both the AMB and SIB riders. Resp. at 10-15. Neither rider contains a separate proofs of loss provision and so the policy's proofs of loss provision governs. Pan-American contends that Dr. Bauer did not timely submit his proof of loss. The policy provides:

> Proofs of Loss – If the policy provides for periodic payment for a continuing loss, written proof of loss must be sent to us within 90 days after the end of each period for which we are liable. For any other loss, written proof must be given within 90 days after such loss. If it is not reasonably possible to give written proof in the time required, we shall not reduce or deny the claim for this reason if the proof is filed as soon as reasonably possible. In any event, the proof required must be given no later than 1 year from the time specified unless the claimant was legally incapacitated.

Engle Decl. ¶ 6, Ex. 4. Pan-American claims that there is a genuine issue of material fact as to whether Dr. Bauer complied with the "1 year" provision or in the alternative whether he provided his proof of loss as soon as "reasonably possible."

Dr. Bauer points out that Pan-American twice informed him that his disability claim was "in the evaluation process" signaling that he had submitted sufficient proof of his claim. Engle Decl. ¶ 4, Ex. 2. The second letter sent by Pan-American did state that it needed additional information. *Id.* Dr. Bauer argues that in any event, sufficient proof of loss was submitted within the 1-year period. Mot. at 13.

ORDER – 6

In the alternative, Dr. Bauer argues that the Washington Court of Appeals' decision in *Kaplan v. Northwest Mut. Life Ins. Co.*, 990 P.2d 991 (Wash. Ct. App. 2000), is applicable here and that the "Proofs of Loss" provision should be read to mean that notice is required during the "period for which the person was or is disabled." Mot. at 14-15.

The *Kaplan* court interpreted an almost identical provision that provided:

> Written proof of disability . . . must be given within 90 days *after termination of the period for which the Company is liable*. Failure to give proof within the time required shall not invalidate nor reduce any claim if it was not reasonably possible to give proof within such time; however, proof must be given not later than one year from the time proof is otherwise required except in the absence of legal capacity.

990 P.2d at 997 (emphasis added). In *Kaplan*, the insurance company argued that the policy should be read to require proof of claim within 90 days after termination of the monthly period for which it was liable despite the fact that the word "monthly" did not appear in the text. *Id.* The court noted that "[t]he policies state that proof must be given 90 days 'after termination of the period for which the company is liable.' Because the period for which Northwestern is liable is the period of Kaplan's disability, which continues to the present, the 90-day period after termination and the absolute one-year period have not yet begun to run. Therefore, we hold that Kaplan's proof of disability was timely regardless of whether Kaplan gave proof as soon as reasonably possible." *Id.* The court also examined three subsequently issued policies that included the word "monthly" before the word "period" and held that once the insurance company inserted the word "monthly" into the policy that the claimant would have to prove that he provided notice within the specified time period or as soon as reasonably possible. *Id.* The court finds the reasoning in the *Kaplan* decision persuasive.

Interpretation of an insurance contract is a matter of law. *See Woo v. Fireman's Fund Ins. Co.*, 164 P.3d 454, 459 (Wash. 2007). Insurance contracts are interpreted

ORDER – 7

according to the way the contract would be "understood by the average insurance purchaser." *State Farm Gen. Ins. Co. v. Emerson*, 687 P.2d 1139, 1142 (Wash. 1984). Here, the language at issue is: "written proof of loss must be sent to us within 90 days after the end of *each* period for which we are liable." Engle Decl. ¶ 6, Ex. 4 (emphasis added). Pan-American asserts that Dr. Bauer is asking the court to ignore a critical difference in the policy language between *Kaplan* and this case, the addition of the word "each" before the word "period." Resp. at 14. However, the language does not specify when "each period" for which the company is responsible ends. It would be entirely reasonable for the average insurance purchaser to assume that if he became disabled and the disability continued for several years that there would be one period for which the insurer was responsible. Interpreting the language in the way that it would be understood by the average insurance purchaser, the court finds that there are no genuine issues of fact and determines as a matter of law that neither the 90-day nor one year period for providing proofs of loss have begun to run and that Dr. Bauer's proof of loss was timely.

**D.      Compliance with the Substantive Requirements of the Riders**

       **1.      Additional Monthly Benefit**

Pan-American contends that the substantive requirements of the AMB rider are as follows: "Total Disability – If total disability begins while this rider is in force and lasts longer than the Elimination Period, we will pay the Monthly Benefit for each additional month total disability continues beyond the Elimination Period." Resp. at 3. The "Elimination Period" is defined as "the period of time disability must last before benefits become payable." Engle Decl. ¶ 6, Ex. 4. The Elimination Period for the AMB rider is 60 days. *Id.* The AMB rider does not define "Total Disability," instead referring to the policy. The policy's definition of "Total Disability" has been modified by the Regular Occupation rider to the following:

ORDER – 8

> Regular Occupation Total Disability occurs when the Insured: Cannot work at his or her regular occupation because of injury or sickness; and [m]ust be under the regular care of a doctor. If in the opinion of the doctor there is no doubt that the insured is disabled and future or continued treatment would be of no benefit to the Insured, the requirement for regular care of a doctor is satisfied. Regular Occupation means the occupation (or occupations, if more than one) in which the Insured is engaged at the start of disability.

*Id.*

Pan-American argues that, "the [Attending Physician's Statement] and tax records Bauer eventually submitted were deficient on their face." Resp. at 10. Apparently it believes that there is some additional unspecified requirement that Dr. Bauer must meet to qualify for benefits, even though it has already determined that Dr. Bauer meets the definition of Regular Occupation Total Disability under the primary policy, using the records (and others that were subsequently provided) that it now claims are deficient.

Dr. Bauer persuasively argues that "[w]hen Pan-American conceded that Plaintiff ha[d] been continuously disabled since 2004, it admitted he ha[d] been disabled longer than the 60-day Elimination Period required under the AMB rider." Mot. at 10. The court finds that there are no genuine issues of material fact with respect to whether Dr. Bauer complied with the substantive requirements of the AMB rider and that as a matter of law he is eligible for that benefit.

### 2. Social Insurance Disability Benefit

Pan-American argues that there are several relevant eligibility terms in the SIB rider including the following: (1) the insured must have been disabled for twelve continuous months; (2) the policy benefit is payable for the disability; (3) the insured is eligible for social security disability benefits when the disability started; (4) the insured must apply for social security disability benefits within six months of the start of the period of disability; (5) the insured is receiving no social security benefits; and (6) the rider is then in force. Resp. at 3. Pan-American also contends that the proof of loss

ORDER – 9

1  requirement for SIB benefits also includes the insured's correspondence with the provider
2  of the social benefit.  *Id.*  There is no dispute that Dr. Bauer has satisfied items 1, 2, 5,
3  and 6.  Additionally, the record reflects that Pan-American has received copies of Dr.
4  Bauer's correspondence with the Social Security Administration.  Huber Decl. ¶ 5 (Dkt. #
5  25); Supp. Engle Decl. ¶ 5, Ex. 3 (Dkt. # 27); Resp. at 15.

### i.  Application for Social Security Within 6 Months of Disability

Pan-American states that there is a question of fact regarding Dr. Bauer's eligibility for the benefits under the SIB rider because he did not apply for social security benefits until September 2006 which was more than 6 months after the onset of his disability in June 2004.  Resp. at 14-15; Bauer Decl. ¶ 7 (Dkt. # 19).

Dr. Bauer contends that the requirement that he apply for social security disability benefits within six months of his disability must be construed within the construct of the SIB rider's other requirements.  Mot. at 20.  Dr. Bauer argues that, "the only reasonable interpretation is that Plaintiff must apply for Social Security Disability benefits within six months of the date Pan-American determined that he was disabled."  *Id.*  Dr. Bauer questions why Pan-American would have expected him to apply for social security disability benefits six months before he became eligible for benefits under the rider (Dr. Bauer had to be disabled for 12 months before he could obtain benefits under the rider).  Mot. at 21.  Dr. Bauer also points out that it would have been fruitless for him to apply for social security benefits from the Social Security Administration as he needed to have been disabled for 12-months before he would have qualified for benefits.[1]  *Id.*  Pan-American did not determine Dr. Bauer was disabled until April 2, 2007.  Engle Decl. ¶ 5, Ex. 3.  Using this date Dr. Bauer contends that his notice was timely.

---

[1] The Social Security Administration website, http://www.ssa.gov/d&s1.htm (last visited October 12, 2007), cited by Dr. Bauer counsels that an applicant should "[a]pply as soon as you become disabled."

ORDER – 10

The language in the contract is clear: "The Insured must apply for Social Insurance disability benefit within six months of the start of the period of disability." Engle Decl. ¶ 6, Ex. 4. Dr. Bauer did not apply for social security disability benefits until September 2006, which is more than six months after the onset of his disability in June 2004. Bauer Decl. at ¶ 7. The court finds that there is no genuine issue of material fact that Dr. Bauer has not met the 6-month requirement of the SIB rider.

Under Washington law, however, "[a]n insurer may deny coverage based on the insured's failure to comply with the policy only if the insurer was actually *prejudiced* by the insured's actions or conduct." *Kaplan*, 990 P.2d at 995. Whether an insurer has been prejudiced by an insured's breach of a portion of the contract is "a question of fact and will seldom be established as a matter of law." *Tran v. State Farm Fire and Cas. Co.*, 961 P.2d 358, 365 (Wash. 1998). The insurer has the burden of proving that it has suffered prejudice from the insured's breach. *Id.* "Claims of actual prejudice require affirmative proof of an advantage lost or disadvantage suffered as a result of the breach, which has an identifiable detrimental effect on the insurer's ability to evaluate or present its defenses to coverage or liability." *Id.* (internal quotation marks and citation omitted). Although the court finds Pan-American's articulated prejudice dubious, the court is reluctant to grant summary judgment on this issue and finds that there is a genuine issue of material fact regarding whether Pan-American has been prejudiced by Dr. Bauer's failure to apply for social security disability benefits within 6 months of becoming disabled.

      **ii.**    **Eligibility for Social Security Disability Benefits**

Pan-American also argues that Dr. Bauer has not met the substantive prerequisites to be eligible for social security disability benefits. It argues that "Bauer readily and correctly acknowledges that one must be disabled to receive Social security disability

ORDER – 11

benefits. And he concedes, also correctly that he is '<u>not disabled per Social Security Administration regulations</u>.' But, he nonetheless argues that he is 'eligible' for Social Security disability benefits - a clear and undisputed requirement for eligibility under the SIB rider." Resp. at 15. Dr. Bauer rightfully points out that "Pan-American's construction would lead to an absurd result - an illusory benefit." Reply at 10. Under Pan-American's construction of the word "eligible," the insured would have to qualify for and receive social security disability benefits. However, receiving social security disability benefits would disqualify the insured from receiving benefits under the SIB rider. Plaintiff would be paying for a benefit he would never receive.

Dr. Bauer argues that "eligibility" for social security benefits means whether he would be entitled to receive benefits if the Social Security Administration determined that he met its definition of disability. The court agrees with this interpretation. Under Pan-American's definition, a claimant would never receive benefits under the policy. A "[c]onstruction which contradicts the general purpose of the contract or results in hardship or absurdity is presumed to be unintended by the parties." *Nautilus, Inc. v. Transamerica Title Ins. Co. of Washington*, 534 P.2d 1388, 1391 (Wash. Ct. App. 1975). The court finds that the term "eligible" means that the claimant has satisfied the criteria for eligibility to receive social security benefits if the Social Security Administration were to determine that he was disabled, namely that he satisfies the criteria found in 20 CFR §§ 404.101(a); 404.130 - 404.133. Pan-American does not dispute Dr. Bauer's assertion that he meets these requirements. *See* Resp. at 15.

The court finds that there are no genuine issues of material fact that: (1) Dr. Bauer has been disabled for twelve continuous months; (2) the policy benefit is payable for the disability; (3) Dr. Bauer was eligible for social security disability benefits when the disability started; (4) Dr. Bauer is not receiving social security benefits; (5) the rider is in

ORDER – 12

force; and (6) Dr. Bauer has provided Pan-American with copies of his correspondence with the Social Security Administration. However, because an issue of material fact remains as to whether Pan-American has suffered prejudice due to Dr. Bauer's failure to apply for social security benefits within 6 months of his disability, the court denies Dr. Bauer's motion with respect to eligibility for benefits under the SIB rider.

**E. Attorneys' Fees and Costs**

Dr. Bauer also seeks attorneys' fees and costs under *Olympic Steamship v. Centennial Ins. Co*, 811 P.2d 673 (Wash. 1991). The court finds the request for fees premature and declines to address Dr. Bauer's entitlement to fees at this time.

### III. CONCLUSION

For the foregoing reasons, the court GRANTS in part and DENIES in part Plaintiff's motion for partial summary judgment.

DATED this 15th day of October, 2007.

JAMES L. ROBART
United States District Judge

ORDER – 13